COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-334-CV
 
 
JANET LOU DOUGLASS                                                         APPELLANT
 
V.
 
COUNTRYWIDE HOME LOANS, INC.                                          APPELLEE
 
 
------------
 
FROM THE 153RD DISTRICT COURT 
OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
I. Introduction
        Appellant, 
Janet Lou Douglass (“Douglass”), appeals from the trial court’s granting 
of summary judgment in favor of appellee, Countrywide Home Loans, Inc. 
(“Countrywide”).  In five issues, Douglass complains that the trial 
court erred in granting Countrywide’s motion for summary judgment.  We 
will affirm in part and reverse and remand in part.
II. Background Facts and Procedural History
        On 
May 21, 1999, Douglass executed a Texas Home Equity Note (the “Note”) in 
favor of ContiMortgage Corporation.  To secure payment of the Note, 
Douglass also executed a Texas Home Equity Security Instrument (“Security 
Instrument”) granting a lien on her property located at 4600 Jim Mitchell 
Trail East, Colleyville, Texas (the “Property”).  The Note and Security 
Instrument were assigned to Manufacturer and Traders Trust Company by 
ContiMortgage Corporation effective October 12, 2000.  Manufacturer and 
Traders Trust assigned the Note and Security Instrument to Countrywide effective 
February 1, 2001.[2]
        The 
terms of the Note required Douglass to make monthly payments beginning on the 
26th day of June 1999 and continuing each month thereafter until the Note was 
paid in full.  Countrywide contends that Douglass defaulted by failing to 
make payments after February 2000.  Douglass contends that Countrywide 
breached its loan agreement with her by refusing two electronic payments 
tendered by her on February 1, 2000.[3]  She 
further asserts that because Countrywide failed to correct its breach after 
notification, the Texas Constitution required it to forfeit all principal and 
interest due, relieving her of her obligation to make payments.  See 
Tex. Const. art. XVI § 50(a)(6)(Q)(x) 
(amended 2003).[4]
        It 
is undisputed that on or about May 8, 2001, Countrywide filed an application for 
home equity foreclosure in the 348th District Court, that the 348th District 
Court granted the application,[5] and that Countrywide 
thereafter posted the Property for non-judicial foreclosure.  On the eve of 
that foreclosure, Douglass filed this suit, seeking a declaratory judgment that 
Countrywide breached its agreement with her and damages resulting from that 
breach.  Countrywide filed a general denial along with a counterclaim 
seeking a court order of foreclosure, and if necessary, a writ of possession.  
Douglass filed a reply which included a general denial as to Countrywide’s 
counterclaim and amending her original petition to seek in addition to damages, 
release of Countrywide’s lien on her Property.
        Countrywide 
then served upon Douglass a request for admissions.  Douglass failed to 
answer and Countrywide filed a motion to deem answers admitted and for 
sanctions.  The trial court held a hearing on Countrywide’s motion on 
January 8, 2003, at which time Douglass appeared pro se, admitting, in 
effect, that she had failed to answer Countrywide’s request for admissions.  
At the conclusion of the hearing, the trial judge took the matter under 
advisement.  On April 8, 2003, the trial court deemed Douglass’s answers 
to be admissions but denied Countrywide’s request for sanctions.
        Subsequently, 
on June 27, 2003, Countrywide moved for a traditional summary judgment on its 
counterclaim and a no-evidence summary judgment as to Douglass’s claims.  
Douglass did not file a response to Countrywide’s summary judgment motion, 
although she appeared pro se at the hearing held on August 13, 2003.  
At the hearing, the trial judge asked Douglass, for purposes of the record, to 
confirm that she had not filed a written response to Countrywide’s motion for 
summary judgment.  Douglass responded that she had not received 
notification from Tommy Bastian (Countrywide’s prior counsel in this case) 
that the hearing was taking place or that he was no longer Countrywide’s 
counsel in the case.  She admitted that she had “received several 
certified mail documents from another law firm,” but stated that she had 
refused to sign for them because (1) they were sent to “Douglas” (not 
Douglass), (2) were addressed to “West Jim Mitchell” (not East Jim 
Mitchell), and (3) not being from Tommy Bastian, she “figured” they would 
not be from the court because the court had “all the pleadings” with the 
correct name and address.  [Id.]  The trial judge noted for the record 
that the court signed an order on January 29, 2003 substituting Ms. Janna Clarke 
as counsel for Countrywide, then asked Ms. Clarke if she had any response to 
Douglass’s assertion regarding the address.  Ms. Clarke responded as 
follows:
  
Your Honor, we have sent Ms. Douglass notice by regular mail, certified mail and 
Federal Express on numerous occasions.  These are all the summary 
judgments.  These are all of the same documents that were sent to her by 
the various methods that I just described.  Each of these have been 
returned to my office.  The only document that I’m aware of that she 
accepted was . . . the notice -- and I don’t even know that she accepted that, 
quite frankly, because we just got notice from the Court last week that this 
hearing was being changed from 9:30 to 2:30.  We resent notice of that 
hearing in each of those three ways.  We’ve not had an opportunity to get 
any of those back.  I don’t know if we will subsequently get those back 
or not.  But we have made every effort.  And these were sent to the 
correct address, Your Honor, and they’ve all been returned.  We did not 
know in what other method we could serve her with these documents.  But 
we’ve made every attempt.
 
 
        At 
the conclusion of the hearing, the trial judge took the matter under advisement.  
By letter dated August 14, 2003, the trial judge overruled Douglass’s 
objections as to service to the extent they were properly before the court, 
granted Countrywide’s motion for summary judgment, and instructed 
Countrywide’s counsel, Janna Clarke, to prepare a proposed summary judgment 
order.  The trial judge signed the summary judgment order granting summary 
judgment on September 19, 2003.  Thereafter, on September 24, 2003, 
Douglass filed an objection to the form of the summary judgment, and, on 
September 29, 2003, she filed a motion to reconsider the summary judgment.  
On December 9, 2003, the trial court entered an order denying Douglass’s 
motion to reconsider the summary judgment.  This appeal followed.
III. Procedural Defects
        In 
her first three issues, Douglass contends that the trial court erred in granting 
summary judgment because (1) Countrywide’s motion for substitution of counsel 
and its motion for summary judgment contained no certificate of conference, (2) 
Countrywide failed to serve her with its motion for substitution of counsel and 
its motion for summary judgment, and (3) Countrywide’s proposed summary 
judgment was not properly served and did not contain a certificate of service.
A.     Countrywide’s 
Motion for Substitution of Counsel
        In 
her first issue, Douglass contends that the trial court erred in granting 
summary judgment because (1) Countrywide failed to serve and deliver on her 
“pleadings and notices of hearings and conformed orders” relative to 
Countrywide’s motion for substitution of counsel, and (2) Countrywide’s 
motion for substitution of counsel contained no certificate of conference.
        Rule 
10 of the Texas Rules of Civil Procedure provides, in relevant part, that where 
“the attorney in charge withdraws and another attorney remains or becomes 
substituted, another attorney in charge must be designated of record with notice 
to all other parties in accordance with rule 21a.”  Tex. R. Civ. P. 10.  However, 
nothing in rule 10 states or suggests that a motion filed by another attorney is 
somehow void or contingent upon the procedural requirements for substitution of 
counsel being met.  See id.; Blanche v. First Nationwide Mortgage 
Corp., 74 S.W.3d 444, 450 (Tex. App.—Dallas 2002, no pet.).  Thus, 
even if the trial court erred in granting Countrywide’s motion for 
substitution of counsel, we conclude that Douglass’s first issue entitles her 
to no relief.
        Further, 
to obtain reversal of a judgment based upon error in the trial court, the 
appellant must show that (1) the error occurred, and (2) it probably caused 
rendition of an improper judgment, or probably prevented the appellant from 
properly presenting the case to the appellant court. Tex. R. App. P. 44.1(a); Beam v. A.H. 
Chaney, Inc., 56 S.W.3d 920, 924 (Tex. App.—Fort Worth, pet. denied).  
Here, Douglass’s only assertion of harm is that she did not receive proper 
notice of the summary judgment hearing because, absent notice from Bastian, she 
had no way of knowing that certified mail from another law firm could be about 
this case.  We find that argument unpersuasive.  Douglass received 
notice sufficient to allow her to attend the summary judgment hearing, her 
statements at that hearing indicate that she was aware that there had been a 
substitution of counsel, and she admitted that she had refused certified mail 
from another law firm.  We overrule Douglass’s first issue.
B.     Countrywide’s 
Motion For Summary Judgment
        In 
her second issue, Douglass argues that the trial court erred in granting summary 
judgment because (1) Countrywide failed to serve and deliver to her “pleadings 
and notices of hearings and conformed orders” regarding its motion for summary 
judgment, and (2) Countrywide’s motion for summary judgment contained no 
certificate of conference.  In response, Countrywide argues that Douglass 
received “constructive notice” of the motion and hearing, and that no 
certificate of conference is required on a motion for summary judgment.
1.     Certificate 
of Conference
        Tarrant 
County Local Rule 3.06(b) states:
 
(b) No motions, objections or special exceptions will be set for hearing unless 
the moving party shall have certified in such motion or in a letter 
substantially the following:
 
‘A 
conference was held on (date) with (name of attorney for opposing party) on the 
merits of this motion.  A reasonable effort has been made to resolve the 
dispute without the necessity of court intervention and the effort failed.  
Therefore it is presented to the Court for determination.’
 
Tarrant (Tex.) Dist. Ct. Loc. R. 3.06(b).  
However, rule 3.06(f) further provides that, “Section (b) of this Rule does 
not pertain to dispositive motions, e.g., Motions for Summary Judgment, Motions 
to Dismiss and Special Exceptions seeking to dismiss a cause of action, or a 
Motion for New Trial.”  Id. 3.06(f).  Thus, we conclude that 
the trial court did not err in granting Countrywide’s motion for summary 
judgment in absence of a certificate of conference because no certificate of 
conference was required.  See id.
2.     Proof of 
Service and Notice of Hearing
        The 
Texas Rules of Civil Procedure require motions for summary judgment and notices 
of hearings to be served on all parties of record. Tex. R. Civ. P. 21, 166a(c).  Rule 
166a(c) provides the nonmovant the right to have minimum notice of the hearing 
on a motion for summary judgment.  See Lewis v. Blake, 876 S.W.2d 
314, 315 (Tex. 1994).  Except on leave of the court, with notice to 
opposing counsel, a motion for summary judgment and any supporting affidavits 
shall be filed and served at least twenty-one days before the time specified for 
hearing.  Tex. R. App. P. 
166a(c).  The purpose of the twenty-one- day notice provision is to give 
the party opposing the summary judgment a full opportunity to respond to the 
merits.  Stephens v. Turtle Creek Apartments, Ltd., 875 
S.W.2d 25, 26 (Tex. App.—Houston [14th Dist.] 1994, no writ).
        However, 
lack of the twenty-one days’ notice of a summary judgment hearing is a 
nonjurisdictional defect that the nonmovant can waive.  See May v. 
Nacogdoches Mem’l Hosp., 61 S.W.3d 623, 626 (Tex. App.—Tyler 2001, no 
pet.); Martin v. Martin, Martin, & Richards, Inc., 991 S.W.2d 1, 11, 
13 (Tex. App.—Fort Worth), rev’d on other grounds, 989 S.W.2d 357 
(Tex. 1998).  If a nonmovant receives notice that is untimely but 
sufficient to enable the nonmovant to attend the summary judgment hearing, the 
nonmovant must file a motion for continuance or raise the complaint of late 
notice in writing, supported by affidavit evidence, and raise the issue before 
the trial court at the summary judgment hearing.  May, 61 S.W.3d at 
626; see also Hudenburg v. Neff, 643 S.W.2d 517, 518 (Tex. App.—Houston 
[14th Dist.] 1982, writ ref’d n.r.e.), cert. denied, 464 U.S. 937 
(1984).  It is only when the nonmovant is not given notice of the summary 
judgment hearing, or is deprived of the right to seek leave to file additional 
affidavits or other written response, that the nonmovant may preserve error in a 
post-trial motion.  May, 61 S.W.3d at 626-27. Such is not the 
situation here.
        Here, 
Douglass received notice sufficient to allow her to appear at the summary 
judgment hearing, she filed no written complaint of late notice, and she did not 
ask for a continuance.  Although Douglass argued at the summary judgment 
hearing that she had not been properly served, her assertions at the summary 
judgment hearing are not evidence.  See Tex. R. Civ. P. 166a(c) (stating “No 
oral testimony shall be received at the hearing.”).  To preserve error, a 
notice objection must be in writing and pending in front of the trial court at 
the summary judgment hearing.  See City of Houston v. Clear Creek Basin 
Auth., 589 S.W.2d 671, 677 (Tex. 1979).  Accordingly, we conclude that 
Douglass waived her right to complain of insufficient notice on appeal.  See 
id.; May, 61 S.W.3d at 626; Neff, 643 S.W.2d at 518.  We 
overrule Douglass’s second issue.
C.     Countrywide’s 
Proposed Summary Judgment
        In 
her third issue, Douglass argues that the trial court erred in granting 
Countrywide’s proposed summary judgment because Countrywide did not properly 
serve upon her its proposed summary judgment.  Specifically, Douglass 
asserts that Countrywide’s service of its proposed summary judgment was 
defective because Countrywide sent the proposed summary judgment by regular mail 
and because the proposed summary judgment did not carry a certificate of 
service.  She also asserts that Countrywide effectively negated her ability 
to timely object to the form of the summary judgment because Countrywide did not 
mail the proposed summary judgment until ten days after the proposed summary 
judgment was filed.  Countrywide responds that a proposed order is not a 
pleading that requires a certificate of service.  We disagree.
        Rule 
305 of the Texas Rules of Civil Procedure provides that “[a]ny party may 
prepare and submit a proposed judgment to the court for signature.” Tex. R. Civ. P. 305.  The rule also 
provides that “[e]ach party who submits a proposed judgment for signature 
shall serve the proposed judgment on all other parties to the suit who have 
appeared and remain in the case, in accordance with Rule 21a.”  Id.  
Rule 21a provides, in relevant part, that the serving “party or attorney of 
record shall certify to the court compliance with this rule in writing over 
signature and on the filed instrument.” Tex. R. Civ. P. 21a.  We conclude, 
therefore, that the trial court erred in granting the proposed summary judgment 
absent the required certificate of service.
        However, 
as previously stated, to obtain reversal of a judgment based upon error in the 
trial court, the appellant must show that the error probably caused rendition of 
an improper judgment, or probably prevented the appellant from properly 
presenting the case to the appellant court. Tex. R. App. P. 44.1(a); Beam, 56 
S.W.3d at 924.  Here, Douglass complains that she was harmed because 
Countrywide’s mailing of the proposed judgment was not timely.  She 
asserts that the delay in mailing effectively negated her ability to timely 
object to the proposed judgment.  She also asserts that Countrywide did not 
mail the proposed judgment until September 10, 2003, ten days after it was filed 
with the trial court, and that she did not receive the proposed judgment until 
on or about September 13, 2003.
        We 
find nothing in rule 305 or rule 21a that requires a specific length of time for 
notice to be given except where a hearing is requested or where a party has the 
right or is required to do some act within a prescribed time frame.  See 
Tex. R. Civ. P. 21a, 305; Tracy 
v. Annie’s Attic, Inc., 840 S.W.2d 527, 539 (Tex. App.—Tyler 1992, writ 
denied).  We note, however, that rule 21 requires three days’ notice 
where a hearing is being requested for a court order. Tex. R. Civ. P. 21.  Here, the 
record reflects that the trial court did not grant the summary judgment until 
September 19, 2003.  Douglass admits that she received the proposed summary 
judgment on or about September 13, 2003.  Thus, Douglass admits that she 
received the proposed summary judgment more than three days before the judgment 
was granted. Further, the record reflects that Douglass filed an objection to 
the form of the summary judgment on September 24, 2003 and that on September 29, 
2003, she filed a motion to reconsider the summary judgment but that she did not 
request an extension of time to file an objection to the proposed summary 
judgment.  Thus, we conclude that Douglass has shown no harm.  See 
Tracy, 840 S.W.2d at 539 (finding no harm where appellant had “not been 
deprived of any right afforded to him by law”).  We overrule Douglass’s 
third issue.
IV. The Propriety of Summary Judgment
        In 
her fourth and fifth issues, Douglass contends that the trial court erred in 
granting summary judgment because (1) Countrywide had no grounds for its 
counterclaim, and (2) she established the elements of her cause of action.  
Specifically, Douglass asserts that the evidence shows that Countrywide breached 
its loan agreement with her by refusing her two payments tendered in February of 
2000, that she notified Countrywide of its breach, and that Countrywide failed 
to correct the beach.  She asserts that as a result of its failure to 
correct the breach, Countrywide was obligated under Article XVI, Section 
50(a)(6)(Q)(x) of the Texas Constitution to forfeit all principal and interest 
due on the Note, relieving her of any further obligation to make payments and 
entitling her to a release of Countrywide’s lien.  See Tex. Const. art. XVI §§ 50(a)(6)(Q)(vii), 
50(a)(6)(Q)(x) (amended 2003).  Countrywide responds that Douglass 
presented no evidence of her claims, that it is not required by the Texas 
Constitution to release its lien on the Property securing the Note, and that it 
had grounds for its counterclaim.
A.     Summary 
Judgment on Douglass’s Claims
1.     No-Evidence 
Standard of Review
        After 
an adequate time for discovery, the party without the burden of proof may, 
without presenting evidence, move for summary judgment on the ground that there 
is no evidence to support an essential element of the nonmovant's claim or 
defense. Tex. R. Civ. P. 166a(i).  The 
motion must specifically state the elements for which there is no evidence.  
Id.; Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 
2002).  The trial court must grant the motion unless the nonmovant produces 
summary judgment evidence that raises a genuine issue of material fact.  See 
Tex. R. Civ. P. 166a(i) & cmt.; 
S.W. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002).
        We 
review the evidence in the light most favorable to the party against whom the 
no-evidence summary judgment was rendered.  King Ranch, Inc. v. Chapman, 
118 S.W.3d 742, 751 (Tex. 2003), cert. denied, 124 S. Ct. 2097 (2004); Johnson, 
73 S.W.3d at 197; Morgan v. Anthony, 27 S.W.3d 928, 929 (Tex. 2000).  
If the nonmovant brings forward more than a scintilla of probative evidence that 
raises a genuine issue of material fact, then a no-evidence summary judgment is 
not proper.  Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex. 
App.—San Antonio 1998, pet. denied).
2.     Analysis
        The 
essential elements in a breach of contract claim are as follows: (1) a valid 
contract exists; (2) the plaintiff performed or tendered performance; (3) that 
the defendant breached the contract; and (4) the plaintiff was damaged as a 
result of the breach.  Frost Nat’l Bank v. Burge, 29 S.W.3d 580, 
593 (Tex. App.—Houston [14th Dist.] 2000, no pet.).
        Here, 
Countrywide asserted in its motion for summary judgment that there was no 
evidence that Countrywide had breached its contract with Douglass and therefore 
no evidence that Douglass was damaged as a result.  Douglass did not file a 
written response to Countrywide’s motion for summary judgment. Instead she 
appears to rely on the allegations contained in her pleadings and the 
attachments to those pleadings.  However, pleadings are not evidence even 
when verified.  Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer, 
904 S.W.2d 656, 660 (Tex. 1995).  Further, our review of the attachments to 
those pleading reveals no admissible evidence supporting Douglass’s claim that 
Countrywide breached its loan agreement with Douglass.
        Thus, 
we conclude that the trial court did not err in granting Countrywide summary 
judgment on Douglass’s breach of contract claim.  Accordingly, we 
overrule Douglass’s fourth and fifth issues to the extent that those issues 
challenge the trial court’s granting of summary judgment to Countrywide on 
Douglass’s claims.[6]
B.     Summary 
Judgment on Countrywide’s Counterclaim
1.     Traditional 
Summary Judgment Standard of Review
        In 
a summary judgment case, the issue on appeal is whether the movant met his 
summary judgment burden by establishing that no genuine issue of material fact 
exists and that the movant is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); S.W. Elec. 
Power Co., 73 S.W.3d at 215; City of Houston, 589 S.W.2d at 678.  
The burden of proof is on the movant, and all doubts about the existence of a 
genuine issue of material fact are resolved against the movant.  S.W. 
Elec. Power Co., 73 S.W.3d at 215; Sci. Spectrum, Inc. v. Martinez, 
941 S.W.2d 910, 911 (Tex. 1997); Great Am. Reserve Ins. Co. v. San Antonio 
Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).  Therefore, we must 
view the evidence and its reasonable inferences in the light most favorable to 
the nonmovant.  Great Am., 391 S.W.2d at 47.
        In 
deciding whether there is a material fact issue precluding summary judgment, all 
conflicts in the evidence are disregarded and the evidence favorable to the 
nonmovant is accepted as true.  Harwell v. State Farm Mut. Auto. Ins. 
Co., 896 S.W.2d 170, 173 (Tex. 1995).  Evidence that favors the 
movant's position will not be considered unless it is uncontroverted.  Great 
Am., 391 S.W.2d at 47.
        The 
summary judgment will be affirmed only if the record establishes that the movant 
has conclusively proved all essential elements of the movant's cause of action 
or defense as a matter of law.  Clear Creek Basin, 589 S.W.2d at 
678.
2.     Analysis
        Under 
Texas Rule of Civil Procedure 735, a party seeking to foreclose a home equity 
lien created under Article XVI, section 50(a)(6) of the Texas Constitution may 
file (1) a suit seeking judicial foreclosure, (2) a suit or counterclaim seeking 
a final judgment which includes an order allowing foreclosure under the security 
instrument and Texas Property Code section 51.002, or (3) an application under 
rule 736 of the Texas Rules of Civil Procedure for an order allowing 
foreclosure.  See Tex. R. Civ. 
P. 735.
        Here, 
the trial court specifically awarded Countrywide summary judgment under rule 
735(2).  Thus, we must determine if Countrywide was entitled to summary 
judgment under rule 735(2).
        Countrywide 
attached to its motion for summary judgment its request for admissions served on 
Douglass along with the trial court’s order deeming Douglass’s answers to be 
admissions.  Attached to the deemed admissions are copies of the Note, 
Security Instrument, and related documents. Douglass’s admissions establish, 
among other things, (1) that the documents attached to the discovery requests 
are genuine, were executed by Douglass, and created a lien against the Property, 
(2) that she failed to make payments after February 2000, (3) that her failure 
to make payments in accordance with the Note allows Countrywide to foreclose 
against the Property, (4) that Countrywide sent her notice of her default, 
offered her an opportunity to cure that default, and that she failed to cure the 
default, (5) that she was sent notice of Countrywide’s intent to accelerate 
the maturity of the debt, and (6) that Countrywide sent her notice that the Note 
had been accelerated.  As previously discussed, Douglass did not file a 
written response.
        On 
appeal, Douglass argues that Countrywide was not entitled to summary judgment on 
its counterclaim because Countrywide no longer had a valid lien on her Property.  
She asserts that because Countrywide breached its loan agreement with her, it 
must forfeit all principal and interest on the Note, entitling her to a release 
of Countrywide’s lien.
        As 
previously discussed, there is no evidence in the record establishing that 
Countrywide breached its contract with Douglass.  Thus, we need not address 
Douglass’s contention that Countrywide forfeit all principal and interest on 
the Note.  Douglass is not entitled to a release of Countrywide’s lien on 
her Property.
        However, 
after reviewing all the evidence, we conclude that Countrywide failed to 
conclusively establish its right to summary judgment on its counterclaim.  
To be entitled to an order of foreclosure, and if necessary, writ of possession, 
Countrywide was required to establish its right to foreclosure under the 
Security Instrument and section 51.002 of the Texas Property Code.  See 
Tex. R. Civ. P. 735(2).
        Paragraph 
20 of the Security Instrument securing the Note provides, in relevant part:
 
Lender shall give notice to Borrower prior to acceleration following 
Borrower’s breach of any covenant or agreement in this Security Instrument . . 
. . The notice shall specify: (a) the default; (b) the action required to cure 
the default; (c) a date, not less than 30 days from the date the notice is 
given to Borrower, by which the default must be cured; and (d) that 
failure to cure the default on or before the date specified in the notice will 
result in acceleration of the sums secured by this Security Instrument and sale 
of the Property.  The notice shall further inform Borrower of the right to 
reinstate after acceleration and the right to bring a court action to assert the 
non-existence of a default or any other defense of Borrower to acceleration and 
sale. . . .
 
 
[Emphasis 
added]
        In 
addition, section 51.002(d) of the Texas Property Code provides, in relevant 
part:
 
(d) Notwithstanding any agreement to the contrary, the mortgage servicer[7] of the debt shall serve a debtor in default under a deed 
of trust or other contract lien on real property used as the debtor’s 
residence with written notice by certified mail stating that the debtor 
is in default under the deed of trust or other contract lien and giving the 
debtor at least 20 days to cure the default before notice of sale can be given 
under Subsection (b). . . . [8]
 
 
Tex. Prop. Code Ann. § 51.002(d) 
(Vernon Supp. 2004-05) (emphasis added).
        We 
find no evidence in the record establishing that Countrywide provided written 
notice to Douglass by certified mail giving her twenty days to cure her 
default.  See id.  Further, we find no evidence in the record 
that Countrywide provided Douglass with notice, in accordance with its Security 
Instrument, stating (1) a date, not less than thirty days from the date of the 
notice, by which she could cure the default, (2) that her failure to cure the 
default on or before that date would result in acceleration of the debt and sale 
of the Property securing the debt, or (3) that Douglass had the right to 
reinstate after acceleration and to bring a court action to assert the 
non-existence of default or any other defense.  See Tex. R. Civ. P. 735(2).
        Thus, 
we conclude that Countrywide has failed to establish its entitlement to summary 
judgment on its counterclaim as a matter of law.  Accordingly, we sustain 
Douglass’s fourth and fifth issues to the extent those issues challenge the 
trial court’s summary judgment on Countrywide’s counterclaim.
IV. Conclusion
        Because 
we conclude that there is no evidence of Douglass’s claims against 
Countrywide, we affirm that portion of the trial court’s summary judgment that 
Countrywide have a take-nothing judgment against Douglass for all her claims.  
On the other hand, because we find there to be insufficient evidence in the 
record to establish Countrywide’s counterclaim for foreclosure and writ of 
possession as a matter of law, we reverse that portion of the trial court’s 
summary judgment that Countrywide have judgment for foreclosure of the Property 
and, if necessary, writ of possession, and remand Countrywide's counterclaim to 
the trial court for further proceedings.
 
   
                                                                  DIXON 
W. HOLMAN
                                                                  JUSTICE
 
 
PANEL B: DAUPHINOT, HOLMAN, 
and WALKER, JJ.
 
DELIVERED: June 30, 2005

 
NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
However, the appellate record includes a copy of a letter from Countrywide to 
Douglass notifying Douglass that Countrywide would begin servicing the Note 
effective October 1, 1999.
3.  
In her brief, Douglass asserts that Countrywide marked her two payments NSF and 
returned the money to her checking account at Bank One twelve days after 
payment.  She suggests that Countrywide did so to establish the default 
necessary to foreclose on her Property.
4.  
Section 50(a)(6)(Q)(x) of the Texas Constitution was amended on September 13, 
2003 to set forth specific criteria under which a lender or note holder could 
cure most violations of the lender or note holder’s obligations under the 
extension of credit.  See Tex. 
Const. art. XVI § 50(a)(6)(Q)(x).  Prior to its amendment in 2003, 
section 50(a)(6)(Q)(x) stated:
 
(x) the lender or any holder of the note for the extension of credit shall 
forfeit all principal and interest of the extension of credit if the lender or 
holder fails to comply with the lender’s or holder’s obligations under the 
extension of credit within a reasonable time after the lender or holder is 
notified by the borrower of the lender’s failure to comply.
 
Tex. Const. art. XVI § 50(a)(6)(Q)(x) 
(amended 2003).
5.  
However, the trial court’s order in that case is not part of the record before 
us.
6.  
On appeal Douglass requests, in effect, that we reverse the trial court’s 
judgment as to her claims, render judgment in her favor, and award her damages.  
Under the circumstances of this appeal, we have no authority to do so.  Tex. R. App. P. 43.2.  Further, 
because we conclude that the trial court did not err in granting Countrywide 
summary judgment on Douglass’s claims, Douglass would not be entitled to the 
relief requested.
7.  
Countrywide is the current mortgage servicer, as such is defined in section 
51.001(3) of the Texas Property Code.  See Tex. Prop. Code Ann. § 51.001(3) 
(Vernon Supp. 2004-05).
8.  
Subsection (b) sets forth the requirements for notice of the foreclosure sale.  
See Tex. Prop. Code Ann. § 
51.002(b) (Vernon 2004-05).